E-FILED
Thursday, 16 August, 2018  04:44:56 PM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

DUANE L.,
     Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
     Defendant.

Case No. 4:17-cv-04172-SLD-JEH

### Report and Recommendation

Now before the Court is the Plaintiff Duane L.'s Motion for Summary Judgment (Doc. 10), the Defendant Commissioner's Motion for Summary Affirmance (Doc. 13), and the Plaintiff's Reply (Doc. 15). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends that the Plaintiff's Motion for Summary Judgment be denied and the Commissioner's Motion for Summary Affirmance be granted.

### I

Duane L. filed his application for supplemental security income (SSI) on November 12, 2013. He alleged disability beginning on January 24, 2012. His claim was denied initially on March 3, 2014 and was denied upon reconsideration on November 25, 2014. Duane filed a request for hearing concerning his application for SSI on December 15, 2014. A hearing was held before the Honorable Deborah E. Ellis (ALJ) on March 22, 2016. At that hearing, Duane was represented by counsel and a Vocational Expert (VE) testified. Following the hearing, Duane's claim was denied on June 1, 2016. His request for review by the

Appeals Council was denied on May 18, 2017, making the ALJ's Decision the final decision of the Commissioner. Duane filed the instant civil action seeking review of the ALJ's Decision on July 11, 2017.

## II

Duane was 39 years old on the alleged disability onset date and lived in an apartment in a complex for people with disabilities in Rock Island, Illinois. On his Form SSA-3368, Duane listed his physical and mental conditions that limited his ability to work as follows: chronic asthma; chronic obstructive pulmonary disorder (COPD); and arthritis. AR 289.

At the hearing, the ALJ questioned whether Duane was ill that day, as he was wearing a mask. Duane testified his asthma, bronchitis, and COPD were all bothering him. He testified he had his nebulizer treatment with him as well as his "pumps" and he had taken his treatment before he arrived at the hearing that morning. AR 41-42. He testified he attempted to keep his mask on as often as possible to keep dust, pollen, and chemicals from his face and "out of [his] breathing atmosphere." AR 42. Duane explained that such things triggered "a lot of stuff off." *Id.*

Duane also testified he had a driver's license and did drive, though he did not have his own car. He used public transportation "[a]ll the time." AR 44. He recalled that he last worked in 2006 or 2007 and at that time he worked full time, seasonal as a bell ringer for the Salvation Army. He was previously a crossing guard and then a cashier for an automobile impound. As the cashier, he sat in a chair and had to elevate his legs due to swelling caused by "[e]dema associated with breathing problems." AR 46. A previous temporary job Duane had involved standing, and another involved work on an assembly line. At one of his temporary jobs, Duane's mask use caused the employer to tell him to leave as the employer did not have respiratory care available. He stated that he had been badly sick since

2

2006 and so he did not obtain any temporary jobs since then. Duane testified that in those last 14 years, he applied for several temporary jobs. As for why he was not working 14 years earlier when he was 28 or 29 years old, Duane testified that he was in a transition phase upon leaving Chicago in 2002. He testified breathing issues, back issues, swollen feet, and headaches were the reasons he believed he was unable to work since 2007.

Duane also testified about his COPD. He visited a pulmonologist but explained that he did not attend pulmonary rehabilitation because at the time he was referred, "there was a lot of things that was going on" including psychiatrist appointments, physical therapy, and thoughts about his father's death and other family members' deaths. AR 52-53, 55. When asked whether his breathing was not a priority for him at that time, Duane responded that he could not move around like everybody else and he daily struggled to get himself going. Duane then clarified that a medical record which noted Duane reported mowing lawns around his neighborhood the previous summer was untrue. He testified that when he walked outside and smelled grass be became sick.

Duane also testified that friends came over and helped him with daily chores or just came over to "sit around and talk." AR 58. In a regular day, Duane groomed himself, tidied up around his apartment, made himself sandwiches and microwaveable meals, and sometimes slept during the day. He attended church if others came to get him to take him there. He otherwise stayed at home. He also tended to his garden.

As for his mental health, Duane testified he saw this therapist every two weeks and Dr. John Ciaccio, M.D. at Robert Young Center every three months. He described the panic attacks he experienced. Duane also testified that he was not interested in further education or an employment skills evaluation because he

3

could not "just sit there" because his mind did not stay focused.  AR 62-63.  He stated he needed to get up and move around.

Upon questioning by his attorney, Duane described the size of his garden and how he tended it and that friends assisted him with it.  He clarified that he did not mow his or others' lawns.  He did not shovel snow.  Duane testified that he always felt overwhelmed and had a hard time setting things aside to focus on something else.  Duane also explained the types of things he worked on in therapy.  He testified that before he came into the hearing he was coughing and throwing up.  However, he testified his breathing was better (after he waited for the medicine to kick in) at that time in the hearing, but he continued to wheeze a bit and felt sweaty and hot.  He also testified about his erratic sleep patterns.  Duane testified that he walked to the bus stop in order to go buy bread.  He did, at times, have panic attacks on the bus caused by an overcrowded bus and the bus's fumes.  He testified his biggest hurdle to work was his breathing issues and how he became fatigued.  To improve his breathing issues, Duane stated he took his medications, tried to keep himself calm, and wore his mask.

The ALJ then questioned the VE.

### III

In her Decision, at Step Two, the ALJ determined that Duane had the following severe impairments:  obesity; COPD; asthma; and osteoarthrosis and allied disorders.  AR 19.  The ALJ found that Duane's medically determinable mental impairment of anxiety disorder was nonsevere because it did not cause more than minimal limitation in his ability to perform basic mental work activities.  The ALJ explained that in making that finding, she considered the four broad functional areas, known as the "paragraph B" criteria, set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments.  The ALJ identified Duane's activities of daily living (mild

4

limitation), his social functioning (mild limitation), his concentration, persistence, or pace (mild limitation), and episodes of decompensation (none). The record evidence she cited included Duane's testimony, his Adult Function Reports, a psychiatric evaluation conducted on May 6, 2015, and the absence of records indicating sustained loss of adaptive functioning or psychiatric hospitalization. The ALJ then proceeded to make an RFC assessment that reflected the degree of limitation she found in the "paragraph B" mental function analysis. In doing so, the ALJ again cited Duane's testimony and she also cited records provided by Robert Young Center and Duane's psychiatrist there, Dr. John Ciaccio, M.D. She also discussed State Agency reviewing Dr. Donna Hudspeth, Psy.D.'s November 2014 opinion which provided Duane's mental impairment was "nonsevere." AR 137. The ALJ discussed that Dr. Hudspeth found mild restriction in the four functional areas. The ALJ cited Duane's medication and its reported efficacy, a July 2015 panic attack, an October 2015 annual assessment, and the results of mental status evaluations.

At Step Three, the ALJ found "no evidence of listing level impairment with consideration given to listings, 3.02, 3.03, 3.10 and 12.06 or any of the other listed impairments identified in 20 CFR Part 404, Subpart P, Appendix 1." AR 23. She further determined that Duane did not manifest clinical signs and findings that met the specific criteria of any listing even after consideration was given to his obesity. She noted that "at the hearing, the claimant's representative did not allege that any listing was met or equaled." *Id*.

At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit six hours in an eight-hour workday. The claimant can stand

5

> and/or walk two hours out of an eight-hour workday. The claimant
> requires the use of a cane for ambulation purposes. The claimant can
> push and pull with the lower extremities occasionally. The claimant
> can occasionally balance, stoop, kneel, crouch, crawl, and climb
> ramps and stairs, but never climb ladders or scaffolds. The claimant
> should have only occasional exposure to dust, odors, gases, and
> pulmonary irritants. The claimant needs to stand and stretch every
> thirty minutes at his workstation. In total, the claimant's [sic] would
> be off task up to ten percent of the workday.

AR 24. The ALJ proceeded to further recite Duane's testimony and explained the RFC provided he would stand and stretch every thirty minutes at his workstation to account for his complaints of back pain and swollen feet. The RFC also provided only occasional exposure to dust, odors, gases, and pulmonary irritants to account for Duane's reported use of a mask to avoid such things and medical evidence supporting his testimony in that regard. The ALJ explained the RFC provided Duane could stand and/or walk two hours in an eight-hour workday given, once again, Duane's own testimony and the supporting medical evidence.

The ALJ stated, "A review of the medical records by the undersigned indicates that the claimant's symptoms and complaints are not supported by objective findings consistent with a finding of total disability." AR 25. The ALJ continued:

> The undersigned further finds that the claimant's allegations are not
> fully consistent with the evidence. In reaching this finding, the
> undersigned has considered a variety of factors. The record does not
> contain any medical opinions from treating or examining doctors
> imposing work-related limitations other than limiting the claimant
> to being exposed to cut grass . . . During the relevant period, the claimant
> has a weak history and when he did work, the earnings were well
> below the substantial gainful activity level, suggesting limited work
> motivation[.]

AR 25.  The ALJ also listed out Duane's medications, dosage, reported efficacy, and side effects.  She then discussed medical records which indicated a "challenge to acquire repeatable and consistent efforts from the claimant concerning pulmonary testing as the claimant gave poor effort."  AR 26.  The cited records pertaining to Duane's pulmonary issues were dated October 2013, January 2014, and January 2015.  The ALJ identified Dr. Afiz Taiwo, M.D.'s note in his Internal Medicine Consultative Examination (CE) where Duane reported he smoked two packs of cigarettes a day for 37 years.  The ALJ further discussed Dr. Taiwo's CE which provided Duane gave poor effort and his cooperation was interrupted with coughing so that his pulmonary function test was "undeterminable."  AR 428.  His lungs were clear to auscultation and percussion without rales, rhonchi, or wheezes.

Next, the ALJ addressed various medical records dated between April 2014 and January 2016 pertaining to the condition of Duane's respiratory and pulmonary health.  Results indicated in those records included normal respiratory effort, clear lung fields upon Duane's visits to Trinity Medical Center emergency room and Unity Point Health's emergency department for complaints of breath shortness and headache, normal pulmonary examination except with bilateral expiratory wheezes, and negative chest x-ray findings.  She noted a pulmonary function study performed in December 2015 indicated "severe obstructive airway disease with a significant response to inhaled bronchodilators[.]"  AR 27.  The ALJ concluded, "Considering this [evidence of pulmonary and respiratory function], the undersigned finds the claimant should have only occasional exposure to dust, odors, gases, and pulmonary irritants."  AR 27.

The ALJ referred to Dr. Taiwo's "independent physical examination" of Duane when she considered his osteoarthrosis and allied disorders.  She considered that examination in finding that Duane could "stand and/or walk two

hours out of an eight-hour workday." *Id.* The ALJ also mentioned a negative October 2014 right knee x-ray and the fact that from October 2014 to February 2015, Duane received aquatic therapy with therapeutic exercises to treat his low back pain. The ALJ gave "less weight" to State Agency reviewing Dr. Calixto Aquino, M.D.'s February 2014 opinion that Duane: could lift and carry 20 pounds occasionally and 10 pounds frequently; could sit six hours in an eight-hour workday and stand and/or walk two hours in an eight-hour workday; frequently kneel, crouch, and crawl; occasionally balance, stoop, climb ramps and stairs; never climb ladders, ropes, or scaffolds; limited to a bilateral ability to push and pull with the lower extremities; and should avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation and hazards such as machinery and heights. AR 28. State Agency reviewing Dr. Marion Panepinto, M.D.'s November 2014 opinion, in turn, provided similar limitations to those Dr. Aquino provided. Except, Dr. Panepinto opined Duane could only occasionally kneel, crouch, crawl and avoid moderate exposure to fumes, odors, etcetera. *Id*. The ALJ gave Dr. Panepinto's opinion "some weight." AR 28. The ALJ also explained she found Duane's cane use required for ambulation purposes, could push and pull with his lower extremities occasionally, needed to stand and stretch every 30 minutes at his workstation, and in total, he would be off task up to 10 percent of the workday.

Finally, the ALJ accounted for treating Dr. Anne Metuge's April 2016 medical source statement (MSS) in which she opined Duane experienced worsening respiratory symptoms when around cut grass such that the ALJ included pulmonary limitations for Duane as set forth in the RFC finding. The ALJ summarized:

> The above residual functional capacity assessment is supported by examination and evaluation reports by treating doctors, consulting

doctors, medical examiners, and the claimant's testimony and daily activities. While the undersigned assesses certain functional limitations, the undersigned does not find the claimant's testimony regarding the severity or frequency of his symptoms to be fully consistent with the evidence or supportive of any greater limitations or restrictions than those the undersigned has included in the residual functional capacity set forth in this decision.

AR 29.

## IV

Here, Duane argues:  1) the ALJ failed to properly consider his COPD, including whether he met or equaled a pulmonary listing; 2) the ALJ erred in failing to properly assess his mental impairments; and 3) the ALJ erred by failing to consider the proper factors when assessing his subjective symptoms and RFC.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for

disability. *See* 20 C.F.R. § 416.966.  The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial

gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Duane claims error on the ALJ's part at Steps Two, Three, and Four.

### A

Duane first argues that the ALJ failed to acknowledge valid spirometry testing that proved Duane met or equaled Listing 3.02 (Chronic respiratory disorders due to any cause except CF []).  He further argues the ALJ ignored the results of that testing when analyzing the listed impairments, did not discuss the December 2015 test results in conjunction with her discussion of the listed impairments, erred in relying on medical opinions that did not consider all the evidence, and erred by not obtaining a medical opinion to evaluate the evidence to determine whether a listed impairment was equaled.  The Commissioner counters that Duane incorrectly argues the December 2015 spirometry testing shows he satisfied subsection A of Listing 3.02.  The Commissioner further points out that the ALJ gave great weight to the Agency doctors' opinions that Duane did not meet or equal Listing 3.02 for COPD, and the Seventh Circuit Court of Appeals has upheld ALJ decisions that cite the opinions of state agency reviewing physicians in support of finding that a claimant did not meet or equal a listed impairment.

To meet or equal a listing, a claimant must satisfy all of the criteria of the listed impairment.  *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006), *citing Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) (citing cases).  Listing 3.02 Chronic respiratory disorders due to any cause except CF (for CF, see 3.04) with A, B, C, or D, subsection A requires "$FEV_1$ (see 3.00E) less than or equal to the value in Table I-A of I-B for your age, gender, and height without shoes (see 3.00E3a)."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.02A.  The value provided for a male, age 20 or older, at a height of 67 inches

without shoes (Duane)[1] requires a $FEV_1$ less than or equal to 1.60.  *Id*.  Listing 3.00E provides, in relevant part, "We use your highest $FEV_1$[2] value to evaluate your respiratory disorder under 3.02A . . . regardless of whether the values are from the same forced expiratory maneuver or different forced expiratory maneuvers."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.00E(1).  Listing 3.00E(2)(b) further provides: "During testing, if your $FEV_1$ is less than 70 percent of your predicted normal value, we require repeat spirometry after inhalation of a bronchodilator to evaluate your respiratory disorder under these listings, unless it is medically contraindicated."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.00E(2)(b).

Duane argues that he met Listing 3.02A because his December 2015 $FEV_1$ measured 1.1.  However, as the Commissioner notes, that December 2015 testing showed an $FEV_1$ of 1.7 after Duane used a bronchodilator.  Thus, Duane's argument that he met Listing 3.02A is incorrect.  Though he argues the Commissioner violated the *Chenery* doctrine in her Motion for Summary Affirmance, Duane is incorrect in that regard too.  The Commissioner did not engage in after-the-fact speculation with regard to the question of whether Duane met Listing 3.02A.  Instead, the Commissioner simply brought to the Court's attention the fact that Duane misunderstood the criteria of Listing 3.02A.  Furthermore, the ALJ's conclusion that Duane did not meet or equal Listing 3.02A is supported by substantial evidence.

Here at Step Three, the ALJ stated that she found no evidence of listing level impairment with consideration given to Listing 3.02, even with consideration given to Duane's obesity, and in reaching her conclusion the ALJ considered the State Agency doctors' opinions.  The State Agency doctors opined that Duane did not meet

---

[1] Duane indicates his height as 66 inches and cites to AR 694, while the Commissioner cites to AR 691, the December 2015 spirometry test, which indicates Duane's height as 67 inches.  Whether the FEV1 of 1.50 for a male of 66 inches or the FEV1 of 1.60 for a male of 67 inches is considered does not change the outcome here.

[2] An $FEV_1$ score is "[t]he volume of air you exhale in the first second of the forced expiratory maneuver," which is "a maximum inhalation followed by a forced maximum exhalation[.]"  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.00E(1).

a listing with consideration given to his COPD. Of course, an ALJ must discuss a listing by name and offer more than a perfunctory analysis of the listing. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). However, the Seventh Circuit has explained that Disability Determination and Transmittal forms "conclusively establish that consideration by a physician designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004); *see also Cirelli v. Astrue*, 751 F. Supp. 2d 991, 1003 (describing *Scheck*'s discussion with regard to Disability Determination and Transmittal forms in the record as indicative of the Commissioner's consideration of medical equivalence a "safe haven"). An ALJ may properly rely upon those experts' opinions and such opinions in the record provide substantial evidence to support the ALJ's finding that a claimant does not meet or equal a listing. *Scheck*, 357 F.3d at 700. The ALJ did just that in this case.

Moreover, Duane's additional arguments – those experts' opinions relied upon old testing and not the December 2015 testing and the ALJ should have sought a medical expert's opinion to evaluate the results – do not warrant remand in this case. The claimant bears the burden of proving his condition meets or equals a listed impairment. *Maggard*, 167 F.3d at 380. In his Reply, Duane argues the Commissioner ignored his argument that he equaled a listing and instead focused only upon whether he met a listing. Notably, however, Duane cites to the December 2015 test results and how they (allegedly) show he *met* Listing 3.02A. As discussed above, those December 2015 test results still fail to show Duane met Listing 3.02A the year following the State Agency doctors' review of the record. Duane also merely argues that the ALJ erred by failing to seek out another medical expert's opinion to evaluate the December 2015 spirometry test results. But those results provided an $FEV_1$ of 1.1 initially and then an $FEV_1$ of 1.7 following the administration of an inhaled bronchodilator. The State Agency experts reviewed January 2014 spirometry test results of 1.74 post bronchodilator. The Court does not see where the alleged error in failing to seek out

13

a medical expert opinion to consider the December 2015 test results was harmful or would otherwise change the outcome. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result).

## B

Duane next argues that the ALJ failed to find his anxiety and PTSD were severe. He argues the ALJ made a finding that contradicted itself where she determined Duane had a moderate limitation in concentration, persistence, and pace and yet found his mental impairment was not severe. He contends that the evidence of record shows that his mental impairment caused more than a minimal effect on his functioning, and the ALJ's failure to incorporate mental restrictions into the RFC was harmful. The Commissioner argues State Agency reviewing psychologist Dr. Hudspeth's opinion and objective evidence supported the ALJ's findings. The Commissioner also disputes the ALJ made a contradictory finding that Duane's mental impairment caused moderate limitation yet was not a severe impairment.

After reading the entirety of the ALJ's Decision and after considering it as a whole, it is clear that the single place in the Decision in which the ALJ found "moderate" limitation in the area of concentration, persistence, or pace was a simple typographical error. *Rice v. Barnhart*, 384 F.3d 363, 369, 370 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole . . . ."); *see also* AR 21 ("In this area, the claimant has mild limitation"); *Id*. ("Because the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas . . . ."); AR 23 ("The undersigned finds the claimant's anxiety to be a nonsevere impairment"); *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (stating the ALJ's Step Two nonsevere finding as to one

impairment was of no consequence with respect to the outcome of the case where the ALJ recognized numerous other severe impairments so that he was obligated to proceed with the evaluation process).  Similarly, a proper reading of the ALJ's Decision reveals that her finding pertaining to Duane's mental impairment was properly supported.

An ALJ must "sufficiently articulate [her] assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning."  *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  At Step Two, the ALJ stated, "The claimant's medically determinable mental impairment of anxiety disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." AR 20.  The ALJ then proceeded to discuss Duane's mild limitations in the four broad functional areas (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation) in order to assess his mental RFC.  In doing so, the ALJ discussed Duane's Adult Function Reports, his own testimony, and a May 2015 psychiatric evaluation.  She additionally considered Duane's April 2014 visit to the Robert Young Center due to panic attacks once every two to three weeks, his GAF scores and why they were given minimal weight, Duane's July 2014 visit to the Robert Young Center and treatment notes that day which indicated Duane's symptoms were relieved with Zoloft.

The ALJ also considered Dr. Hudspeth's opinion and assigned it great weight because it was "consistent with the minimal health care treatment of record" and she had program knowledge in disability evaluation.  AR 23.  Duane takes issues with the ALJ's consideration of Dr. Hudspeth's opinion, arguing that the ALJ based her finding on a cursory record review and summary performed by Dr. Hudspeth who did not review most of the file.  Duane cites to evidence of record dated after Dr. Hudspeth's November 2014 review and argues such evidence shows his mental impairments

15

caused more than minimal effect on his functioning.  Much of the record evidence to which he cites was also cited by the ALJ in her Decision.  Duane essentially asks the Court to reweigh the evidence, which the Court cannot do.  *See Schmidt*, 201 F.3d at 972 (explaining court may not reweigh evidence or substitute its own judgment for that of the ALJ).

Finally, the ALJ discussed records dated throughout 2015 that provided Duane reported a panic attack, anxiety over several deaths and accidents with relatives, passive suicidal thoughts without plans, medications worked effectively, and improvement in the frequency and severity of his anxiety attacks.  The ALJ pointed to records which indicated Duane's appearance and behavior were normal, he was alert and oriented, and he was appropriate, polite, pleasant, and cooperative.  When the ALJ later discussed her RFC finding at Step Four, the ALJ stated:

> In assessing claimant's functioning, the undersigned has considered both the claimant's severe and non-severe impairments.  Concerning the non-severe impairments identified at Step 2, the undersigned does not find that these impairments, considered singly and in combination, with the claimant's severe impairments, impose any additional limitations than those assessed in the residual functional capacity defined above. The undersigned specifically notes that the mild limitations assessed in the undersigns' [sic] discussion of the paragraph "B" criteria does not warrant any non-exertional mental limitations.

AR 29.  The ALJ thus built a logical bridge between the evidence and her decision to omit any non-exertional mental limitations from the ultimate RFC finding.  *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014), *quoting Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (explaining that the ALJ must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence).

## C

Duane lastly argues the ALJ applied an incorrect legal standard when she considered his subjective symptoms and failed to acknowledge his testimony painted

a very different picture of his activity than that depicted in the Decision. He contends the ALJ erred in assessing both the testimony and the medical evidence. He further argues the ALJ's RFC addressed some of his impairments but did not address his extreme difficulties with concentration or persistence due to pain, fatigue, and mental health symptoms. The Commissioner argues that the medical opinion evidence, Duane's behavior, and the objective evidence all supported the ALJ's Decision.

SSR 16-3p directs the ALJ to focus on the "intensity and persistence of the applicant's symptoms" rather than on his "credibility." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016), *citing* SSR 16-3p, 81 Fed. Reg. 14166 (Mar. 16, 2016). SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. § 416.929(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional imitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7.

Duane specifically takes issue with the ALJ's consideration of his daily activities. In her Decision, the ALJ recited Duane's daily activities including that he managed living alone, used public transportation, shopped in stores, cared for his own personal hygiene, cleaned his home, prepared simple meals, gardened 30 minutes every other day, managed his own funds, attended church, and visited with friends and relatives. The ALJ determined that Duane's described daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitation." AR 25. The ALJ made no error in considering those daily activities, particularly where she abided by the regulations in doing so along with her consideration of other factors including Duane's medications and their side effects,

17

objective medical records, medical opinions of record, the exacerbating effect of Duane's obesity on his significant medical problems, and Duane's testimony as to his medical issues and what aggravated them. The ALJ also discussed that Duane declined pulmonary rehabilitation when it was offered.

A claimant's RFC "is the most he can still do despite his limitations." 20 C.F.R. § 416.945(a). An RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p; *see also Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("In assessing the claimant's RFC, the ALJ must consider both the medical and nonmedical evidence in the record"). Here, the ALJ properly and adequately considered and discussed her RFC finding.

As just addressed above, the ALJ listed Duane's daily activities and concluded they were not as limited as one would expect given his complaints. The ALJ also noted the record did not contain any medical opinions from treating or examining doctors imposing work-related limitations other than a limitation that Duane not be exposed to cut grass. She noted Duane's weak work history and the fact that when he did work, his earnings were "well below the substantial gainful activity level, suggesting limited work motivation." AR 25. She included Duane testified he talked to God to calm himself down from a panic attack, his mind did not stay focused when he sat still, and he needed accommodations to learn or perform work. In the way of medical evidence, the ALJ detailed Duane's various medications. She noted his October 2014 report that if he missed a dose, he had a panic attack and his October 2015 report that his medications worked effectively. The ALJ discussed her review of Duane's medical records including the poor effort he gave with pulmonary testing, the frequency of his visits to his doctor and therapist, his use of an inhaler four times a day, his use of a nebulizer machine twice a day, and his respiratory and pulmonary examination results between April 2014 and January 2016. The ALJ also discussed

18

Dr. Taiwo's internal medicine consultative examination of Duane in January 2014 wherein Dr. Taiwo diagnosed Duane with chronic obstructive lung disease, obesity, and degenerative disease of the lumbar spine with radiculopathy. The ALJ identified the ways in which obesity can cause limitations in function and acknowledged that Duane's obesity did have a limiting effect on his ability to work to the extent contemplated in the RFC she assigned. As for the opinion evidence of record, the ALJ explained that both Dr. Aquino and Dr. Panepinto did not have the opportunity to consider subsequent documentation and testimony, and the ALJ formulated an RFC more limited than even Dr. Panepinto's more recent opinion. In accordance with Dr. Metuge's MSS opining that Duane experienced worsening respiratory symptoms when he was around cut grass, the ALJ included pulmonary limitations in her RFC finding. The ALJ then referred to her earlier discussion of Duane's mental impairments and why no non-exertional mental limitations were included in the RFC finding.

Clearly, the ALJ's discussion of her RFC finding included a description of how the evidence supported each conclusion and included ample citation to the relevant record evidence. Substantial evidence supports the ALJ's RFC finding. Given that the ALJ committed no reversible error in her consideration of Duane's subjective symptoms and the RFC, the single sentence[3] Duane highlights to support his argument that the ALJ applied the incorrect legal standard is harmless when considered in the context of the ALJ's Decision as a whole as addressed above. *See Rice*, 384 F.3d at 369 (explaining that a court will give an ALJ's opinion a commonsensical reading rather than nitpicking at it).

---

[3] "A review of the medical records by the undersigned indicates that the claimant's symptoms and complaints are not supported by objective findings consistent with a finding of total disability." AR 25.

19

4:17-cv-04172-SLD-JEH    # 16    Filed: 08/16/18    Page 20 of 20

**V**

For the reasons set forth above, it is recommended that:  1) the Plaintiff's Motion for Summary Judgment (Doc. 10) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 13) be granted; 3) judgment be entered in favor of the Defendant, Commissioner of Social Security, and against the Plaintiff,  Duane L.; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation.  FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on August 16, 2018.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE