UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DUANE LEWIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:17-cv-04172-SLD-JEH ) |
| ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) |

ORDER

Plaintiff Duane Lewis filed an application for supplemental social security income on November 12, 2013. Compl. ¶ 1, ECF No. 1; R. 17.[1] The Commissioner of the Social Security Administration ("the Commissioner") denied the application, Compl. ¶¶ 1–2, and Lewis now seeks judicial review of that decision pursuant to 42 U.S.C. § 405(g). Lewis filed a Motion for Summary Judgment, ECF No. 10, and the Commissioner filed a Motion for Summary Affirmance, ECF No. 13. Before the Court is United States Magistrate Judge Jonathan Hawley's Report and Recommendation ("R&R"), ECF No. 16, which recommends denying Lewis's motion and granting the Commissioner's motion. Lewis has objected to the R&R, ECF No. 17, and the Commissioner has responded, ECF No. 18. For the reasons that follow, the R&R is ADOPTED. Lewis's Motion for Summary Judgment is DENIED and the Commissioner's Motion for Summary Affirmance is GRANTED.

I.  **Report and Recommendation**

When a magistrate judge considers a pretrial matter dispositive of a party's claim or defense, he must enter a recommended disposition. Fed. R. Civ. P. 72(b)(1). Parties may object

---

[1] The administrative record can be found at ECF No. 7. Citations to the record take the form R. __.

within fourteen days of being served with a copy of the recommended disposition. *Id.* 72(b)(2). The district judge considers de novo the portions of the recommended disposition that were properly objected to, and may accept, reject, or modify the recommended disposition, or return it to the magistrate judge for further proceedings. *Id.* 72(b)(3). If no objection, or only partial objection, is made, the district judge reviews the unobjected portions of the recommendation for clear error only. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

The R&R sets forth the relevant procedural background, including an overview of the ALJ's decision, so the Court will not repeat that discussion here. R&R 1–9. It also sets forth the three arguments Lewis made at summary judgment:

> 1) the ALJ failed to properly consider his COPD, including whether he met or equaled a pulmonary listing; 2) the ALJ erred in failing to properly assess his mental impairments; and 3) the ALJ erred by failing to consider the proper factors when assessing his subjective symptoms and [residual functional capacity, or,] RFC.

*Id.* at 9. Judge Hawley recommends rejecting all three arguments and affirming the ALJ's decision. *Id.* at 20.

Lewis filed an objection. Objection. The Commissioner argues that it is not sufficiently detailed to allow a response. Resp. Objection 1–2. The Court agrees that the Objection is vague. Federal Rule of Civil Procedure 72(b)(2) requires "specific written objections." The Seventh Circuit interprets this to mean that a party must only "specify each issue for which review is sought and not the factual or legal basis of the objection." *Johnson*, 170 F.3d at 741. Local Rule 72.2(B) appears to require more, mandating that a party "specifically identify the portions of the report and recommendation to which objection is made and the basis for the objection." Lewis's objection does not specifically identify which portions of the report he objects to; indeed, he fails to cite to the R&R entirely. And the references to the R&R are varied and confusing. For

2

instance, Lewis indicates that he objects to "*the* finding that the ALJ's Decision was based upon substantial evidence," Objection 1 (emphasis added), but the R&R specifically concludes in two places that the ALJ's determinations were based on substantial evidence, *see* R&R 12 (referring to "the ALJ's conclusion that [Lewis] did not meet or equal Listing 3.02A"); *id.* at 19 ("Substantial evidence supports the ALJ's RFC finding"). Without indicating that he has changed subjects, Lewis then notes that he is not asking the Court "to reweigh the evidence, but instead articulates how the ALJ's Decision was not supported by substantial evidence." Objection 1 (citing to the entirety of his "Brief and Reply Brief"). This seems to be a reference to Judge Hawley's comment that, with respect to his argument that the ALJ erred by finding his mental impairments to be non-severe, Lewis seemed to be "ask[ing] the Court to reweigh the evidence." R&R 16. In the next sentence of his Objection, Lewis asserts that failure to properly consider evidence that supported disability "led to an inappropriate residual functional capacity finding that failed to include all of [his] restrictions." Objection 1. Lastly, Lewis argues that "the Commissioner's arguments constitute forbidden after-the-fact speculation," citing to the entire argument section from the Commissioner's memorandum in support of its Motion for Summary Affirmance. *Id.* This might be a reference to Judge Hawley's finding that "[t]he Commissioner did not engage in after-the-fact speculation with regard to the question of whether [Lewis] met Listing 3.02A," R&R 12, although this language and the broad citation indicate that Lewis believes all of the Commissioner's arguments were improper.

Arguably, Lewis did not properly object because he failed to clearly specify the portions of the R&R to which he objects. However, in light of the limited specificity the Seventh Circuit requires for Rule 72(b)(2) objections, the Court concludes by reading Lewis's Objection as a whole that he has sufficiently identified two issues for which he seeks review. First, Lewis

3

objects to Judge Hawley's conclusion that the RFC determination was based on substantial evidence. This includes the conclusion that omitting non-exertional mental limitations from the RFC was supported. *See* R&R 16. And second, Lewis objects to Judge Hawley's conclusion that the Commissioner did not engage in post-hoc rationalization with respect to whether he met Listing 3.02.[2] The Court will review these two issues de novo. The Court has reviewed the remainder of the R&R for clear error and found none.

**II.     Analysis**

The court reviews a decision denying benefits to determine only whether the ALJ applied the correct legal standard and whether substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quotation marks omitted). The ALJ does not have "to provide a complete and written evaluation of every piece of testimony and evidence, but must build a logical bridge from the evidence to his conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quotation marks omitted). On review, the court cannot reweigh the evidence, decide questions of credibility, or substitute its own judgment, but must "nonetheless conduct a critical review of the evidence." *McKinzey*, 641 F.3d at 889.

    **a.  RFC**

In determining whether Lewis was disabled as of his alleged onset date, the ALJ applied the standard five-step analysis. *See* 20 C.F.R. § 416.920(a)(4)(i)–(v) (indicating that an ALJ

---

[2] Although Lewis contended in his response to the Commissioner's Motion for Summary Affirmance that the rest of the Commissioner's arguments were also improper for this reason, Pl.'s Reply Br. 1, ECF No. 15, the contention is not nearly specific enough for the Court to rule on it. Lewis fails to point the Court to any other specific argument the Commissioner makes so that the Court can compare the argument with the ALJ's reasoning. "It is not th[e] court's responsibility to research and construct the parties' arguments." *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000).

considers, at step one, work activity; at step two, the medical severity of impairments; at step three, whether an impairment meets or equals a presumptive disability; at step four, RFC and past work; and at step five, RFC and other work in the economy). Lewis argues that the ALJ's RFC determination is not supported by substantial evidence. RFC is "what an individual can still do despite his or her limitations, based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citations and quotation marks omitted).

Here, the ALJ determined that Lewis had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the following restrictions: 1) he can lift twenty pounds occasionally and ten pounds frequently; 2) he can sit for six hours and stand or walk for two hours of an eight-hour workday; 3) he requires use of a cane; 4) he needs to stand and stretch every thirty minutes; 5) he can push and pull with his lower extremities occasionally; 6) he can balance, stoop—that is, bend at the waist—kneel, crouch, crawl, and climb ramps and stairs occasionally; 7) he can never climb ladders or scaffolds; and 7) he can have only occasional exposure to dust, odors, gases, and pulmonary irritants. R. 24. The ALJ determined that Lewis would be off-task no more than ten percent of a work day. *Id.*

These restrictions are all supported by substantial evidence. The ALJ discussed opinion evidence that supports the RFC. No treating or examining physician opined that Lewis had work-related limitations. The only opinion evidence from a treating physician was Dr. Anne Metuge's note that Lewis "experiences worsening respiratory symptoms when he is around cut grass." R. 730. There was, however, opinion evidence from an agency file-reviewer, Dr. Marion Panepinto, to which the ALJ gave "some weight." R. 28. Dr. Panepinto opined that many of the above-described limitations were warranted due to Lewis's chronic obstructive pulmonary

5

disease, obesity, loss of strength in his lower extremities, use of a cane, limited ability to walk, and complaints of knee pain and shortness of breath caused by exertion. R. 138–39. Dr. Panepinto also opined that Lewis should avoid moderate exposure to fumes, odors, dusts, gases, and poor ventilation due to his history of asthma. R. 139–40. The ALJ gave only some weight to this opinion because there was subsequent documentation that Dr. Panepinto did not consider.

The ALJ discussed other evidence which also supports the RFC. R. 24–28. For instance, she discussed results from an examination by a consulting physician, Dr. Afiz Taiwo, which showed that Lewis had full upper-extremity strength. R. 428. She discussed Lewis's testimony that walking causes breathing difficulties, *e.g.*, R. 56, and Dr. Taiwo's observation that Lewis could not walk fifty feet without support, R. 428. She also discussed an October 2014 knee x-ray which showed no abnormalities. R. 488. She credited Lewis's own testimony that his feet swell if he sits for too long. R. 51. She discussed Dr. Taiwo's assessment that Lewis had diminished strength in his lower extremities and a limited range of motion in the lumbar spine. R. 428. But she cited to many musculoskeletal exams which showed a normal range of motion as well. *See* R. 386, 450, 457, 478, 521, 602, 667. She also noted that Lewis received physical therapy for lower back pain in late 2014 and early 2015. R. 541–89.

In support of the environmental limitation imposed—that Lewis can have only occasional exposure to irritants—the ALJ discussed Lewis's testimony that he wears masks to keep his exposure to irritants and cold air down, R. 42; the effectiveness of his inhaler and home nebulizer treatments, *e.g.*, R. 612–14; Dr. Metuge's assessment that exposure to cut grass exacerbates his respiratory symptoms, R. 730; clinical assessments that he has severe obstructive airway disease that responds to inhaled bronchodilators; R. 670–72; and the fact that Lewis declined a referral to pulmonary rehabilitation, R. 53–54, 616. She also discussed Lewis's history of flare ups and

6

emergency room visits, but noted that physical examinations conducted in conjunction with those visits have shown no more than decreased breath sounds and wheezes, *e.g.*, 667, and that an x-ray showed hyperinflated, but clear lungs, R. 479. She also noted that Lewis's symptoms generally improved when given treatment. *E.g.*, R. 667. The ALJ further concluded that Lewis's obesity exacerbates his functional and pulmonary limitations, but that the above-identified limitations adequately account for such exacerbation. R. 27–28.

In his summary judgment motion, Lewis also argued that the RFC determination fails to address his "extreme difficulties with concentration or persistence due to pain, fatigue, and mental health symptoms." Mem. Supp. Mot. Summ. J. 15, ECF No. 10-1. An ALJ is required to "consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). Here, the ALJ specifically addressed Lewis's non-severe impairments in her RFC determination. R. 29. She concluded that considered alone or in conjunction with his severe impairments, Lewis's non-severe impairments did not warrant any additional limitations. *Id.*

In support of this determination, the ALJ referred back to her earlier discussion of whether Lewis's anxiety disorder caused limitation in four broad functional areas—daily living; social functioning; concentration, persistence or pace; and episodes of decompensation—and whether his anxiety caused any broader functional limitations. *Id.* She found that Lewis's disorders caused no more than mild limitation in each of the four categories. R. 21. She then conducted an RFC analysis to determine the degree of functional limitation, if any, caused by Lewis's anxiety. R. 22–23. In doing so, she discussed Lewis's testimony, the medical evidence, and opinion evidence. She described Lewis's testimony at the hearing as follows: at times, he withdraws from being around people, but other times, he has to get out because he feels the walls

7

closing in on him, R. 58; he has relatives, friends, and associates who come by to socialize or help him with errands or chores, R. 58–59; he sees a mental health doctor every three months and a therapist every two weeks, R. 62; he has panic attacks, which cause him to get hot, *id.*; it is hard for him to stay focused, *id.*; he always feels overwhelmed, R. 67; and he "tr[ies] to stay in tune with God" or call a friend when he has a panic attack, R. 76.

Medical records show that Lewis went to Robert Young Mental Health in April 2014 because he was having panic attacks every two to three weeks. R. 472. Dr. John Ciaccio indicated that Lewis was having a grief reaction because his uncle and friend had recently died. *Id.* He was prescribed Zoloft. R. 473. In July 2014, Lewis saw Dr. Ciaccio again and reported that his panic disorder had decreased significantly with the Zoloft. R. 468. In October 2014, Lewis reported that if he missed a dose of his medication, he had panic attacks. R. 516. In December 2014, he reported that the Zoloft was helping. R. 515. Dr. Ciaccio increased the prescribed dosage at that time. *Id.* In February 2015, Lewis reported that "his anxiety ha[d] improved significantly since he began treatment." R. 504. In September 2015, he indicated that he was having panic attacks two to three times a week. R. 498. Dr. Ciaccio noted that Lewis was having a grief reaction because his aunt, two of his cousins, a neighbor from childhood, and his best friend had all recently died. *Id.* In October 2015, Lewis indicated that his medications were working effectively. R. 490.

The ALJ also noted that, at various times, Dr. Ciaccio assigned Lewis Global Assessment of Functioning ("GAF") scores between 60 and 63. *See* R. 473–74, 510. As the ALJ explained, the GAF scale is a way to measure the severity of mental illness symptoms. R. 22 n.1; *see also* What Is the Global Assessment of Functioning (GAF) Scale?, WebMD, https://www.webmd.com/mental-health/gaf-scale-facts (last visited Sept. 11, 2018). A GAF

score between 51 and 60 indicates moderate symptoms, while a GAF between 61 and 70 indicates mild symptoms and that the patient is generally functioning pretty well. R. 22 n.1. The ALJ took these scores into consideration, but gave them little weight because GAF values are based on subjective complaints and reflect a specific moment in time. R. 22 & n.1.

The only opinion evidence regarding Lewis's mental health was a report from Dr. Donna Hudspeth. R. 23. Dr. Hudspeth reviewed evidence in the record as of November 2014 and opined that Lewis's anxiety was not severe. R. 137. She indicated that his mental status exams and activities of daily living were normal and that he was treated with good results. *Id.* The ALJ gave "[g]reat weight" to Dr. Hudspeth's opinion, noting that she was experienced in disability evaluation and her opinion was "consistent with the minimal mental health care treatment of record." R. 23. Lewis argued in his summary judgment motion that Dr. Hudspeth's opinion did not take into account his mental health treatment records after 2014. Mem. Supp. Mot. Summ. J. 12. But as explained above, the ALJ discussed and considered the evidence from 2015 herself. She found that Lewis's panic attacks decreased in severity and frequency with treatment, that he had previously declined therapy, *see* R. 510, and that his mental status examinations were normal. R. 23. She therefore determined that his anxiety disorder was not severe, *id.*, and did not warrant any non-exertional limitations, R. 29.

In sum, the ALJ adequately discussed the relevant evidence and certainly marshaled enough evidence to support her RFC determination. In his summary judgment motion, Lewis argued that there was evidence showing "that he would miss days of work and be off task more than 10% of the workday due to exacerbation of symptoms." Mem. Supp. Mot. Summ. J. 14 (stating that he suffers from flare ups and severe respiratory dysfunction, that his panic attacks have continued despite treatment, and that he has visited the emergency room multiple times).

9

But the ALJ considered this evidence and determined that it did not support more restrictive limitations. Lewis does not point to any evidence that the ALJ failed to consider which would show that she selectively cited evidence that supported her conclusion. *See Denton*, 596 F.3d at 425 ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). The ALJ's RFC determination is supported by substantial evidence.[3]

### b. Post-Hoc Rationalization

At step three of the standard five-step analysis, the ALJ must consider whether the plaintiff has an impairment that "meets or equals one of [the] listings in appendix 1 to subpart P

---

[3] Social Security Rulings ("SSRs") "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (citations and quotation marks omitted); *see* 20 C.F.R. § 402.35(b)(1). SSR 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017), requires an ALJ to "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." The ALJ must consider "the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* The ALJ must also consider the following factors in evaluating the intensity of an individual's symptoms: the individual's daily activities; the location, duration, frequency and intensity of the symptoms; precipitating and aggravating factors; medications and other treatments the individual receives; other measures the individual takes to alleviate symptoms; and any other relevant factors. *Id.* at *7–8; *see also* 20 C.F.R. § 416.929(c)(3)(i)–(vi). In his summary judgment motion, Lewis argued that the ALJ improperly assessed his subjective symptoms. Mem. Supp. Mot. Summ. J. 13–15. He argued that the ALJ needed to make a credibility finding and that she improperly found him not credible because his symptoms were not supported by objective evidence and improperly interpreted his daily activities as undermining his credibility. *Id.* These arguments seem to rely on old standards. SSR 16-3p, 2017 WL 5180304, at *2, superseded an older SSR and "eliminat[ed] the use of the term 'credibility' from" agency policy. The ruling, which was made effective on March 28, 2016, 2016 WL 1237954, at *1 (Mar. 24, 2016), makes clear that it applies to agency decisions issued after that date. SSR 16-3p, 2017 WL 5180304, at *1. As the ALJ's decision was issued June 1, 2016, R. 31, SSR 16-3p applies. This is reflected in the ALJ's determination that Lewis's allegations regarding the intensity and limiting effect of his symptoms were "not fully consistent with the evidence," R. 25, rather than not credible. Judge Hawley concluded that the ALJ properly considered Lewis's testimony about his daily activities alongside evidence about his medications and their side effects, the objective medical evidence, the opinion evidence, Lewis's testimony about precipitating and aggravating factors for his symptoms, his declination of pulmonary rehabilitation when it was offered, and his weak work history. R&R 17–18. Lewis does not specifically raise the argument again in his Objection, so the Court is not required to review de novo whether the ALJ properly assessed his reports of disabling symptoms. However, because an "ALJ must consider both the medical and nonmedical evidence" in assessing RFC, *see Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001), the ALJ's consideration of Lewis's subjective complaints is relevant to whether her RFC determination is supported by substantial evidence. The Court has fully reviewed the record and agrees with Judge Hawley's analysis and conclusion on this issue. The ALJ considered the proper factors and adequately explained her reasoning for finding that not all of Lewis's reported limitations were supported by the record. Those that were supported by the record were addressed in the RFC determination.

of part 404 of this chapter." 20 C.F.R. § 416.920(a)(4)(iii). If he does, then he is considered disabled. *Id.* Here, the ALJ found "no evidence of listing level impairment with consideration given to listings, 3.02, 3.03, 3.10 and 12.06." R. 23. She indicated that she considered the opinions of the two consulting doctors who reviewed Lewis's file, both of whom opined that he had not met or equaled any of the listings, in reaching her conclusion. *Id.*

Lewis's arguments for judicial review centered on Listing 3.02, which is for chronic respiratory disorders due to any cause except cystic fibrosis. 20 C.F.R. pt. 404, subpt. P, App. 1, § 3.02. He argued that he did meet or equal Listing 3.02A, citing to valid spirometry testing done in December 2015. Mem. Supp. Mot. Summ. J. 9. While the ALJ acknowledged this testing in a different section of her decision, *see* R. 27, she did not discuss it in determining that Lewis did not meet or equal a listing. The Commissioner argued that Lewis misunderstood the criteria for Listing 3.02A and that the results of his testing did not meet the criteria. Mem. Supp. Mot. Summ. Affirmance 17, ECF No. 14. The spirometry results show a $FEV_1$ value of 1.1 before administration of an inhaled bronchodilator and 1.7 after. R. 672. The Social Security Administration uses the "highest $FEV_1$ value to evaluate . . . respiratory disorder[s] under 3.02A." 20 C.F.R. pt. 404, subpt. P, App. 1, § 3.00E. For someone Lewis's height[4] and age to meet Listing 3.02A, spirometry results must show a $FEV_1$ value less than or equal to 1.5. *Id.* § 3.02A tbl. I-B. Using Lewis's highest $FEV_1$ value, 1.7, he did not meet the listing.

Lewis asserts that the Commissioner's argument was "forbidden after-the-fact speculation," presumably because the ALJ did not address the 2015 testing in determining that he did not meet a listing. Pl.'s Reply Br. 1, ECF No. 15. Generally, agency lawyers cannot

---

[4] The parties disagree over Lewis's height. Lewis indicates that he is 66 inches tall, Mem. Supp. Mot. Summ. J. 9, while the Commissioner states that he is 67 inches tall, Mem. Supp. Mot. Summ. Affirmance 17. The relevant $FEV_1$ value for a 66-inch tall male over 20 years old is 1.5. 20 C.F.R. pt. 404, subpt. P, App. 1, § 3.02A tbl. I-B. The relevant $FEV_1$ value for a 67-inch tall male over 20 years old is 1.6. *Id.* Lewis's highest score is higher than both.

defend an agency's decision "on grounds that the agency itself had not embraced." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). But there is an exception to this rule for harmless error. *Id.* at 924. "If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support," a court need not remand to the agency for further proceedings. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The Commissioner argued that ALJ error in this context is harmless "[u]nless a claimant can show that a more thorough analysis of the evidence could show that he met or equaled a listing." Mem. Supp. Mot. Summ. Affirmance 16–17. She then explained that the 2015 spirometry results did not meet the criteria. *Id.* at 17. The Court understands the Commissioner to be arguing that even if the ALJ erred in failing to assess the 2015 testing, the error is harmless because consideration of the results would not change her decision on whether Lewis met Listing 3.02A. Her argument fits squarely within the exception to the ban on defending an ALJ's decision on different grounds than the ALJ embraced, so Lewis's argument fails.

### III. Conclusion

Accordingly, the Report and Recommendation, ECF No. 16, is ADOPTED. Lewis's Motion for Summary Judgment, ECF No. 10, is DENIED and the Commissioner's Motion for Summary Affirmance, ECF No. 13, is GRANTED. The Clerk is directed to 1) enter judgment as follows: IT IS ORDERED AND ADJUDGED that the Commissioner of the Social Security Administration's decision in this matter is affirmed; and 2) close the case.

Entered this 18th day of September, 2018.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE